# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZIH CORP., | ) |
| | ) |
| Plaintiff, | ) CA No. 03-CV-12358-DPW |
| | ) (Alexander, M.J.) |
| v. | ) |
| | ) |
| PAXAR CORPORATION | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
## TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)

Lee Carl Bromberg, BBO # 058480
Erik Paul Belt, BBO # 558620
Bromberg & Sunstein LLP
125 Summer Street
Boston, MA 02110
Tel: 617-443-9292
Fax: 617-443-0004
Email: ebelt@bromsun.com

Jean Dudek Kuelper, Esq.
Steven J. Hampton, Esq.
Sandra A. Frantzen, Esq.
McANDREWS, HELD & MALLOY LTD.
500 West Madison Street, Suite 3400
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

*Attorneys for Paxar Corporation*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.    The Parties and the Accused Printers ................................................................ 2

    B.    The Pending Ohio Litigations ........................................................................... 3

        1.    Paxar Americas v. ZIH and Zebra ........................................................ 3

        2.    The Ohio Declaratory Judgment Action .............................................. 5

ARGUMENT: ........................................................................................................................ 7

    A.    Transfer of Venue Requirements ...................................................................... 7

    B.    Venue Is Proper in the Southern District of Ohio ............................................. 8

    C.    The Relevant Considerations Strongly Favor Transfer to the Southern District of Ohio ............................................................................... 9

        1.    The Operative Facts of This Case Occurred in Ohio And Bear No Material Connection to Massachusetts .................................. 10

        2.    The Convenience of the Witnesses And Availability of Process to Compel Attendance Favor Transfer to Ohio Because The Relevant Witnesses Are Located in Ohio ........................... 11

        3.    Because The Relevant Documents Are Located in Ohio, the Relative Ease of Access To Sources of Proof Favors Ohio ..................... 13

        4.    The Convenience of the Parties Favors Transfer to Ohio ......................... 14

        5.    The Other Pending Ohio Lawsuits Favor Transfer to the Southern District of Ohio ............................................................... 15

            a.    The Other Related Ohio Cases Support Transfer ......................... 15

            b.    Because the Balance of Conveniences Strongly Favors Ohio, The "First-To-File" Doctrine Does Not Apply .............................................................................. 16

        6.    The Interests of Justice and Trial Efficiency Favor Transfer to the Southern District of Ohio ............................................................ 17

CONCLUSION ..................................................................................................................... 18

# INTRODUCTION

This is a patent infringement action brought by ZIH Corp. ("ZIH") against Paxar Corporation. ZIH alleges that the Sierra Sport™ 2, a label printer which is manufactured in Ohio, infringes two patents. ZIH brought this lawsuit to retaliate against Paxar Corp. and its subsidiary, Paxar Americas, Inc. ("Paxar Americas") for filing a patent infringement action in Ohio in which Paxar Americas has accused ZIH of willfully infringing eight patents also relating to label printers.

Because all of the relevant factors governing transfer of cases pursuant to 28 U.S.C. § 1404(a) support transfer to the Southern District of Ohio, where this case could and should have been brought, this case should be transferred. First, Paxar Corp. is aware of no witnesses or evidence located in Massachusetts. On the other hand, virtually all of the documents, things, and witnesses relevant to this lawsuit are located in and around Miamisburg, Ohio. Specifically, it is Paxar Americas, the subsidiary of Paxar Corp., that conceived, designed, developed, approved for manufacture, manufactures, markets, and sells the accused product. However, Paxar Americas is not a party to this action. Next, the existence of two separate actions currently pending in the Southern District of Ohio also supports the transfer of this case. Both Ohio cases are pending before the Honorable Judge Walter H. Rice. Finally, because Massachusetts is not ZIH's "home turf," ZIH's choice of forum entitled to little deference.

Because the Southern District of Ohio is more convenient with respect to the pertinent documentary and testimonial proof, and the interests of justice will be served better by trial there, Paxar Corp. respectfully requests that the Court grant its motion to transfer this action to the Southern District of Ohio.

**FACTUAL BACKGROUND**

Plaintiff ZIH filed this patent infringement action against Defendant Paxar Corp. on November 21, 2003, alleging that the Sierra Sport™ 2 printer infringes U.S. Patent Nos. 5,813,343 and 5,860,753 ("the '343 and '753 patents," respectively), which are allegedly assigned to ZIH (hereinafter, "the Massachusetts lawsuit"). The Sierra Sport™ 2 printer is a label printer that is manufactured in Ohio and has been sold by Paxar Americas, a separately incorporated subsidiary of Defendant Paxar Corp., since at least late 2000. (Horning Decl.[1], at ¶¶ 3, 8). Importantly, Paxar Americas is not a party to the Massachusetts lawsuit.

### A.    The Parties and the Accused Printers

ZIH has alleged that it is a Delaware corporation with a usual place of business in Hamilton, Bermuda. (Complaint, at ¶ 1). Upon information and belief, ZIH has no facilities or personnel in Massachusetts. ZIH's only apparent connection to Massachusetts is that its trial counsel is located in Boston.

Paxar Corp. is a New York corporation with a principal place of business in White Plains, New York. (*Id.*, at ¶ 2). Like ZIH, Paxar Corp. does not have any offices or personnel in Massachusetts.[2] (Stone Decl., at ¶ 5).

The accused Sierra Sport™ 2 printers were designed, developed, and researched by Paxar Americas, a separately incorporated Paxar Corp. subsidiary located in Miamisburg, Ohio. (Horning. Decl., at ¶ 3, 6). Paxar Americas (formerly known as Monarch Marking Systems, Inc.,

---

[1] "Stone Decl." and "Horning Decl." refer to the Declaration of Robert S. Stone and the Declaration of Gary Horning, both of which accompany Paxar's motion and memorandum.

[2] The Foxboro, Massachusetts office that was formerly a Paxar Corp. office is now operated by Paxar Americas and is staffed only by employees of Paxar Americas. (Stone Decl., at ¶ 5).

"Monarch")[3] has been the sole manufacturer of the Sierra Sport™ 2 printers since their release in about late 2000. (*Id.*, at ¶ 8). Paxar Americas is not a named party in this lawsuit.

<u>Paxar Corp. does not presently sell the accused Sierra Sport™ 2 printers</u>. (Stone Decl., at ¶ 8). However, during a brief eleven-month period in 2002 when the Paxar Americas sales force was merged with the Paxar Corporation sales force, Paxar Corporation employees sold printers. (*Id.*, at ¶ 6). Thus, for this brief period of time, Paxar Corp. did sell the Sierra Sport™ 2 printers. (Horning Decl., at ¶ 10). However, all of the Sierra Sport™ 2 printers sold by Paxar Corp. during the eleven-month period were manufactured by Paxar Americas (then Monarch) in Ohio. *Id.*

### B.     The Pending Ohio Litigations

#### 1.     Paxar Americas v. ZIH and Zebra

ZIH filed the Massachusetts lawsuit in an apparent attempt to retaliate for another lawsuit currently pending in Ohio. ZIH's claims in this Court came quick on the heels of another action between Paxar Americas and ZIH. In April 2003, Paxar Americas brought a patent infringement lawsuit against ZIH, its parent company, Zebra Technologies Corporation and corporate affiliate Zebra Technologies International (collectively "Zebra"), in the Southern District of Ohio (hereinafter, "the Ohio Zebra/ZIH litigation"). In that patent infringement lawsuit, Paxar Americas has alleged that many ZIH and Zebra products infringe eight of Paxar Americas' patents. (Exhibit 1, Complaint for Civil Action No. C-3-03-142 (S.D. Ohio)).

---

[3] Paxar Americas was formerly Monarch Marking Systems, Inc. (Horning Decl., at ¶ 2). In December 2002, Paxar Corp. transferred certain assets to Monarch. (Stone Decl., at ¶ 4). In January, 2003, Monarch changed its name to Paxar Americas. (*Id.*; Horning Decl., at ¶ 2).

That the Massachusetts lawsuit is simply a retaliatory attempt to intimidate Paxar Americas is demonstrated by ZIH's conduct in the Ohio Zebra/ZIH litigation. Notably, even though the Sierra Sport™ 2 printers had been on the market for a number of years prior to the Massachusetts lawsuit, ZIH had never accused Paxar Americas or its Sierra Sport™ 2 printer of infringing the patents-in-suit until shortly after Paxar Americas filed its Complaint in the Ohio Zebra/ZIH litigation. (Exhibit 2, Letter dated May 30, 2003).

In a letter dated May 30, 2003, Noel Elfant, Vice President and General Counsel for Zebra Technologies Corporation, sent a letter addressed to "Paxar Americas, Inc.," contending that it was infringing five patents, including the patents-in-suit. *Id.* After Paxar Americas responded to that charge of infringement, Zebra appeared to have dropped the charge of infringement. (Exhibit 3, Letter dated June 4, 2003). Zebra never responded to Paxar's charge that "Zebra has not performed a Rule 11 due diligence review of Paxar's products, the patents, their prosecution history or the prior art. The five patents are not valid and/or infringed. Further, from a review of the patents, it appears to us that, not only has Zebra copied Paxar's products with wanton and willful disregard for our patents, but Zebra has obtained patents on technology that Zebra (Comtec/Eltron) did not invent but copied from others and mainly from Paxar." *Id.*

Discovery in the Ohio Zebra/ZIH litigation, which is before the Honorable Judge Walter H. Rice, has already begun. The parties have both filed motions for entry of a protective order. The Ohio Zebra/ZIH litigation may involve many of the same issues and questions that may arise in the Massachusetts lawsuit. Particularly, the parties will determine the state of the prior art of label printers and to what extent ZIH and Zebra have engaged in copying Paxar Americas' products. Moreover, the interrelationship between the cases is further demonstrated by the May

30, 2003, letter of Noel Elfant, which links the '343 and '753 patents with the Ohio Zebra/ZIH litigation.

### 2. The Ohio Declaratory Judgment Action

As discussed above, Paxar Americas, a non-party in the Massachusetts litigation, designed and developed the Sierra Sport™ 2 printers and began selling the product in the United States in late 2000. (Horning Decl., at ¶¶ 6, 8). Once ZIH asserted that Paxar Corp. infringed the '343 and '753 patents, on November 25, 2003, Paxar Americas, apprehending a lawsuit against it, filed a Complaint for declaratory judgment of non-infringement, invalidity, and unenforceability of the '343 and '753 patents in the Southern District of Ohio, where the Ohio Zebra/ZIH litigation was pending. (Exhibit 4, Complaint for Declaratory Judgment, Civil Action No. C-3-03-417 (S.D. Ohio)). That declaratory judgment action (hereinafter, "the Ohio DJ Action"), was assigned to the Honorable Walter H. Rice – the same judge that is handling the Ohio Zebra/ZIH litigation. The Ohio DJ Action is similar to the action pending before this Court; however, the DJ plaintiff in that action is Paxar Americas (not Paxar Corp.), *i.e*., the party who developed, manufactured, marketed, and sold the Sierra Sport™ 2 printers and the party who continues to manufacture, market and sell those printers today.

Paxar Americas filed the Ohio DJ action in Ohio because almost all of the relevant evidence relating to the alleged infringement by Paxar Americas is in and around Miamisburg, Ohio. The Sierra Sport ™ 2 printers were conceived, designed, developed, researched, and manufactured in Paxar Americas' facilities in Miamisburg, Ohio. (Horning Decl., at ¶¶ 6, 8). Paxar Americas currently sells the accused products out of its home base in Ohio. (*Id.* at ¶ 8). Day-to-day management of the accused printer, as well as the marketing and booking of sales for the printers occur in Miamisburg, Ohio. (*Id.*, at ¶ 9). The pertinent witnesses relative to the

5

research, development, design, operation, marketing, and selling of the Sierra Sport™ 2 printers would likely be Paxar Americas' employees located in Ohio. (*Id*., at ¶¶ 11-15). Additionally, the pertinent documentary evidence regarding the conception, design, development, research, testing, manufacture, marketing and sale of the accused products are located in Miamisburg. (*Id.,* at ¶¶ 7, 10; Stone Decl., at ¶¶ 7, 9).

In the Ohio DJ Action, ZIH filed a motion to dismiss for lack of personal jurisdiction. ZIH is also seeking a dismissal of Paxar Americas action due to the Massachusetts litigation between ZIH and Paxar Corp. (Exhibit 5, ZIH Corp.'s Motion to Dismiss). However, on December 17, 2003, Paxar Americas filed an Amended Complaint for Declaratory Judgement in the Ohio DJ Action, pursuant to Rules 15(a) and 20(a) of the Federal Rules of Civil Procedure. (Exhibit 6, Amended Complaint for Declaratory Judgment). This Amended Complaint cured any allegations of improper personal jurisdiction as to ZIH and adds ZIH's parent company, Zebra Technologies Corporation, the party who sent the threatening letter to Paxar Americas concerning the patents in this suit.

Most importantly, ZIH made a representation to the court in the Ohio DJ Action that ZIH will be using the Massachusetts litigation "to <u>enjoin</u> Paxar, <u>including all of its subsidiaries</u> [i.e., Paxar Americas] and affiliates, <u>from manufacturing or selling</u> the Sierra Sport™ 2 printer anywhere in the United States." (Ex. 5, at 4). ZIH makes this statement to the Ohio court even though, by failing to name Paxar Americas as a party, ZIH never informs *this* Court that <u>Ohio-based</u> Paxar Americas will allegedly be enjoined. In view of (1) the May 30, 2003 letter (Ex. 2) in which <u>Zebra Technologies Corp</u>. charges <u>Paxar Americas, Inc.</u> with infringement of the patents-in-suit and ZIH's curious omission of these parties from this Massachusetts lawsuit while including New York-based Paxar Corp.; and (2) ZIH's admission that it seeks to enjoin Ohio-

6

based Paxar Americas in the Massachusetts lawsuit without advising this Court, ZIH's actions appear to be a deliberate yet misguided attempt to avoid the Ohio venue and the Ohio Zebra/ZIH litigation.

**ARGUMENT**:

**CONVENIENCE AND THE INTEREST OF JUSTICE DIRECT THE TRANSFER OF VENUE TO THE SOUTHERN DISTRICT OF OHIO**

    A.    **Transfer of Venue Requirements**

A change in venue in a civil action is governed by 28 U.S.C. § 1404, which provides in pertinent part:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any action to any district or division where it might have been brought.

The purpose of section 1404(a) is to prevent waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 27 (1960). The decision whether to transfer venue is left to the sound discretion of the trial court. *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir. 1977). The inquiry on the motion to transfer involves two steps. First, a court must determine whether the action sought to be transferred is one that "might have been brought" in the district court in which the moving party seeks to have the case litigated. 28 U.S.C. § 1404(a). Next, the court must examine whether a transfer is appropriate by considering the "convenience of the parties and witnesses" and the "interest of justice." *Id.*; *Atari v. United Parcel Serv., Inc.,* 211 F.Supp.2d 360, 361-62 (D.Mass. 2002). In this case, the inquiry supports a transfer to Ohio, where two other similar cases are pending.

### B.   Venue Is Proper in the Southern District of Ohio

Venue in a patent infringement action is governed by 28 U.S.C. § 1400(b). It provides in relevant part:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

Under the general corporate venue statute, 28 U.S.C. § 1391(c), a corporate defendant resides in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. It cannot be disputed that Defendant Paxar Corp. is subject to personal jurisdiction in Ohio. Specifically, the accused products were sold by Paxar Corp. in Miamisburg, Ohio, during the eleven-month period in 2002. (Horning Decl., at ¶ 10; Stone Decl., at ¶ 6).

Most importantly, although Paxar Americas is not a named party to this action, ZIH has stated in filings to the Ohio Court that "ZIH seeks to <u>enjoin</u> Paxar, <u>including all of its subsidiaries</u> and affiliates, <u>from manufacturing or selling</u> the Sierra Sport™ 2 printer anywhere in the United States." (Ex. 5, at 4 (emphasis added)). Paxar Americas, the party that ZIH has alleged it is seeking to enjoin in this action, though improperly by failing to name Paxar Americas as a party, has its principal place of business in Ohio. (Horning Decl., at ¶ 4). Thus, this action could have been brought in the Southern District of Ohio, where the accused products have always been manufactured and sold and where ZIH is seeking to enjoin that manufacturing and sale.

Plaintiff ZIH may attempt to argue that transfer to the Southern District of Ohio is improper because, as it alleges in its Motion to Dismiss in the Ohio DJ action, the Ohio court does not have personal jurisdiction over it. However, with regards to this motion to transfer, such an argument is plainly irrelevant. First, as shown above, the statutes governing transfer require personal jurisdiction over the <u>defendant</u> corporation, not the plaintiff. 28 U.S.C. § 1400(b).

*8*

Second, by filing this lawsuit in Massachusetts, ZIH has consented to this Court's jurisdiction and any decisions by this Court to transfer to a more convenient forum under 28 U.S.C. § 1404. *See, e.g., Murray v. Scott,* 176 F.Supp.2d 1249, 1255 (M.D. Ala. 2001) ("There is also no merit to [plaintiff's argument] that [transferee court] must have personal jurisdiction over him for the transfer to be proper."); *R.E.F. Golf Co. v. Roberts Metals, Inc.,* 24 U.S.P.Q.2d 1070, 1071 (M.D. Fla. 1992). Thus, ZIH's motion to dismiss for lack of personal jurisdiction in Ohio is irrelevant to this present Motion to Transfer.[4]

### C. The Relevant Considerations Strongly Favor Transfer to the Southern District of Ohio

The second determination in a motion to transfer is whether the transfer would serve the convenience of the parties and witnesses and is in the interests of justice. 28 U.S.C. § 1404(a). Courts generally consider a variety of factors in determining whether to transfer a case pursuant to § 1404(a).

> The factors to be considered by a court in ruling on a motion to transfer include (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining willing witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively.

*F.A.I. Elecs. Corp. v. Chambers,* 944 F.Supp. 77, 80-81 (D. Mass. 1996) (granting motion to transfer); *see also Atari,* 211 F.Supp.2d at 362 (enumerating similar factors).

---

[4] In any case, in its Amended Complaint for Declaratory Judgment in the Ohio DJ Action, Paxar Americas has added Zebra Technologies Corporation as a party. (Ex. 6). Zebra Technologies Corporation has already conceded that it is subject to personal jurisdiction in Ohio in the Ohio Zebra/ZIH litigation.

### 1.     The Operative Facts of This Case Occurred in Ohio And Bear No Material Connection to Massachusetts

As an initial matter, the place where the operative facts occurred is an important factor to be considered in deciding where a case should be tried. *Atari,* 211 F.Supp.2d at 363. "In an action for patent infringement, the [proper] forum is the locus of the operative facts if, inter alia, the design, development, and some of the marketing of the product allegedly infringing plaintiff's patent occurred in [that] forum and the designers, developers, and marketers live and work in that forum." *Wechsler v. Macke Int'l Trade, Inc.,* No. 99 CV 5725, 1999 WL 1261251, at *4 (S.D.N.Y. Dec. 27, 1999). *See also Clinical Dynamics Corp. v. Dynatech Nevada, Inc.,* No. 99-10048-Z, 1994 WL 175026, at *3 (D. Mass. Apr. 13, 1994) (granting motion to transfer in patent infringement case to where accused infringer was located because "[t]his [patent infringement] lawsuit concerns the genesis, development and marketing of the [accused product]").

Here, Paxar Americas conceived, designed, developed, researched, manufactures, manages, markets and books sales for the accused product <u>in Miamisburg, Ohio</u>. (Horning Decl., at ¶¶ 6, 8, 9). A project team based in Miamisburg, Ohio conceived, designed, developed, and researched the Sierra Sport™ 2 printer in the late 1990's. (*Id.*, at ¶ 6). Additionally, Paxar Americas' employees based in Miamisburg, Ohio, are knowledgeable regarding the structure, function, operation, design, development, sales and marketing of the Sierra Sport™ 2 printer. (*Id.* at ¶¶ 12-15).

The only connection between the alleged infringement of the '753 and the '343 patent and the District of Massachusetts is that some sales to customers might have occurred in this district during the eleven-month period. However, in a patent infringement action, where the defendant sells products in many states, sales alone are insufficient to establish a material connection to the forum. *See Boreal Laser Inc. v. Coherent Inc.,* 22 U.S.P.Q.2d 1559, 1560 (S.D.N.Y. 1992);

*Invivo Res., Inc. v. Magnetic Resonance Equipment Corp.,* 119 F.Supp.2d 433, 438-39 (S.D.N.Y. 2000) (transferring case where "[t]he sole connection between this action and the Southern District of New York is the sale of a minute percentage of the accused products and the location of plaintiff's counsel"). That Paxar Corp. once had a Foxboro, Massachusetts sales office for an eleven-month period in 2002 is, thus, irrelevant to the inquiry. (Stone Decl., at ¶ 5). This is particularly true since all records of sales during the eleven-month period are kept by Paxar Americas in Miamisburg, Ohio. (Horning Decl., at ¶ 10). Accordingly, the locus of the operative facts is undoubtedly Ohio and this factor strongly supports transfer to the Southern District of Ohio.

### 2. The Convenience of the Witnesses And Availability of Process to Compel Attendance Favor Transfer to Ohio Because The Relevant Witnesses Are Located in Ohio

This Court has held that, although no definitive guidelines for weighing the factors has developed, "the convenience of the witnesses is probably the most important factor, and the factor most frequently mentioned." *Atari,* 211 F.Supp.2d at 362 (citations and quotations omitted); *see also Princess House, Inc. v. Lindsey,* 136 F.R.D. 16, 18 (D. Mass. 1991) (granting motion to transfer); *Employers Ins. of Wausau v. Commercial Union Ins. Co.,* 735 F.Supp. 1103, 1104 (D. Mass. 1990) (same). "The court must consider the number of potential witnesses located in both the transferor and transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Atari,* 211 F.Supp.2d at 362.

Here, the individuals most knowledgeable about the research, development, design, operation, marketing and selling of the Sierra Sport™ 2 printers are Paxar Americas' employees in Ohio. (Horning Decl., at ¶ 11; Stone Decl., at ¶ 9). Thus, virtually all of Paxar Corp.'s probable witnesses would be inconvenienced by the current forum. (Horning Decl., at ¶ 16). The

*11*

following individuals, who are Paxar Americas employees (and, thus, third parties to this action whose attendance could only be compelled in Ohio) would likely be called as witnesses and would likely testify to the information listed:

- Tom Keller is a Paxar Americas' employee who is based in Miamisburg, Ohio and is knowledgeable about the structure, function, operation, design, and development of the Sierra Sport™ 2 printer.

- Don Morrison is a Paxar Americas' employee who is based in Miamisburg, Ohio and is currently involved in marketing of the Sierra Sport™ 2 printer line.

- Linda Delaney is a Paxar Americas' employee who is based in Miamisburg, Ohio and is responsible for the marketing of the Sierra Sport™ 2 printer.

- Mike Wines is a Paxar Americas' employee who is based in Miamisburg, Ohio and is responsible for sales of the Sierra Sport™ 2 printer and is knowledgeable regarding sales efforts related to that printer.

(Horning Decl., at ¶¶ 12-15). Because all of these witnesses are located in Ohio, it would be costly and inconvenient for Paxar Corp. and these witnesses to have them to travel to and from Massachusetts for trial or any other proceedings. (*Id.*, at ¶ 16).

Conversely, Paxar Corp. is aware of no ZIH or Paxar Corp. witnesses located in Massachusetts. When the parties conferred on the issues raised in this motion, counsel for Paxar did not indicate that there were any ZIH witnesses in Massachusetts. Accordingly, the convenience of the witnesses and the fact that all of the witnesses knowledgeable about the accused product and sales are third party witnesses, being employees of Paxar Americas, heavily favors transfer of this action to the Southern District of Ohio. *See, e.g., Dana Corp. v. Goodyear Tire & Rubber Co.,* No. 85-1162-W, 1985 WL 6042, *1 (D. Mass. Sept. 30, 1985) (The court transferred a patent infringement case to Ohio where both the patentee and the accused infringer were Ohio companies with witnesses in Ohio); *Princess House,* 136 F.R.D. at 19-20 (The court transferred the case after considering the costs of travel to third party witnesses).

### 3. Because The Relevant Documents Are Located in Ohio, the Relative Ease of Access To Sources of Proof Favors Ohio

The location of the relevant documents also supports transfer to the Southern District of Ohio. The relative ease of access to sources of proof is typically dependent on the locus of operative facts. *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730 (S.D.N.Y. 1998). Here, because the Sierra Sport™ 2 printer is manufactured and sold out of Paxar Americas in Ohio, most of the documents concerning proof of alleged infringement would be located in Ohio. (Horning Decl., at ¶ 7; Stone Decl., at ¶¶ 7, 9). In particular, the vast majority of documents regarding the conception, design, development, research, and testing of the Sierra Sport™ 2 printer are located in Miamisburg, Ohio. (Horning Decl., at ¶ 7).

Moreover, Paxar Corp. does not presently sell and, since January 2003, has not sold printers in Massachusetts or any place else. (Stone Decl., at ¶ 8). All records of sales of printers sold by Paxar Corp. during the eleven-month period in 2002 are now kept by Paxar Americas in Miamisburg, Ohio. (Stone Decl., at ¶ 7; Horning Decl., at ¶ 10).

Again, Paxar Corp. is not aware of any documents in Paxar Corp.'s possession, custody, and control regarding the conception, design, development, research, testing, marketing, and sale of the Sierra Sport™ 2 printer that are located in Massachusetts. (Stone Decl., at ¶¶ 7, 9). Because ZIH alleges that it has its principal place of business in the Bahamas, it is unlikely that any ZIH documents are located in Massachusetts. When the parties conferred on the issues raised in this motion, counsel for ZIH did not indicate that there were any ZIH documents in Massachusetts.

Furthermore, because virtually all of the documents, things, and witnesses relevant to this lawsuit are located in and around Miamisburg, Ohio, it would increase the overall expense of the

*13*

lawsuit to conduct a trial in this forum, rather than in the Southern District of Ohio. Thus, the practical difficulties of the case favor transfer of this action to Ohio.

### 4. The Convenience of the Parties Favors Transfer to Ohio

Although there is a presumption in favor of the plaintiff's choice of forum, "where the plaintiff is not bringing suit on its "home turf," plaintiff's choice of forum carries less weight." *Transamerica Corp. v. Trans-American Leasing Corp.,* 670 F.Supp. 1089, 1093 (D. Mass. 1987) (because plaintiff did not bring suit in its "home court," plaintiff's choice of forum "is not dispositive"); *see also McEvily v. Sunbeam-Oster Co., Inc.,* 878 F.Supp. 337, 344 (D.R.I. 1994) (Defendant's "burden is lightened when a plaintiff has not brought suit on his 'home turf' or at the site of the activities at issue in the law suit."). Here, ZIH has alleged that it is a Delaware corporation with its principal place of business in the Bahamas. Thus, Massachusetts is not ZIH's "home turf" and is entitled to less deference.

Upon information and belief, ZIH has no connection to Massachusetts, other than the fact that its trial counsel is located in Boston. However, this Court has noted that, because "[n]o case articulates that the convenience of counsel is a consideration in deciding a motion to transfer….[w]hether this court is more convenient to the plaintiff's counsel is, accordingly, of no consequence." *Princess House,* 136 F.R.D. at 18 (emphasis added); *see also McEvily,* 878 F.Supp at 344 ("To the extent plaintiff chose Rhode Island to facilitate use of his current Rhode Island counsel, this fact is entitled to little, if any, weight.").

Given that ZIH has no material connection to Massachusetts, ZIH would be no less inconvenienced to try this case in Ohio, where two other cases involving ZIH are currently being litigated. On the other hand, given that the accused product is being manufactured in Ohio and the relevant witnesses and documents are located in Ohio, it would be far less convenient for

*14*

Paxar Corp. to try this case in Massachusetts where there appears to be no relevant witnesses or documents.

### 5. The Other Pending Ohio Lawsuits Favor Transfer to the Southern District of Ohio

#### a. The Other Related Ohio Cases Support Transfer

"Considerations of judicial economy strongly suggest that this case should be transferred to the district in which a related case is pending." *Fairfax Dental Ltd. v. S.J. Filhol Ltd.,* 645 F.Supp. 89, 92 (E.D.N.Y. 1986) (granting motion to transfer). *See also Lexington Ins. Co. v. City of Phoenix,* No. 96-10319-WGY, 1996 WL 463672, * 1 (D. Mass. July 31, 1996) (granting motion to transfer in view of parallel litigation); *Wellons v. Numerica Sav. Bank, FSB,* 749 F.Supp. 336, 337 (D. Mass. 1990) (granting motion to transfer, in part because consolidation of related suits "would further the efficient administration of justice"). "Judicial economy is served by having the two actions in the same district even though actual consolidation of the actions may not be possible; <u>the litigation of related claims before the same judge</u> may conserve judicial resources and avoid inconsistent rulings." Moore's, at § 111.13[1][o], at p. 111-93-94 (emphasis added).

Here, there are two lawsuits currently pending in the Southern District of Ohio, <u>both of which are before the Honorable Judge Rice</u>. The Ohio DJ Action, brought by Paxar Americas, involves the same patents and products at issue in this lawsuit. If this Court transferred the Massachusetts litigation to Ohio, Paxar Corp. would seek to consolidate that litigation with the Ohio DJ Action. Moreover, the Ohio Zebra/ZIH action, filed back in April 2003, involving Zebra's and ZIH's willful infringement of eight Paxar Americas' patents, may involve many of the same issues and questions that may arise in the Massachusetts lawsuit. Particularly, the parties

will determine the state of the prior art of label printers and to what extent ZIH and Zebra have engaged in copying Paxar Americas' products. This interrelationship between the cases is further demonstrated by (1) the letter of Noel Elfant, which links the '343 and '753 patents with the Ohio Zebra/ZIH litigation and (2) ZIH's admission that it seeks to enjoin Paxar Americas, a party in the Ohio DJ Action but <u>not</u> a party here.

### b. Because the Balance of Conveniences Strongly Favors Ohio, The "First-To-File" Doctrine Does Not Apply

In the Ohio DJ action, ZIH has argued, under the "first-to-file" rule, that the allegedly second-filed Ohio DJ lawsuit should be dismissed in favor of the first-filed Massachusetts lawsuit. (Ex. 5). Although ZIH filed the Massachusetts lawsuit against Paxar Corp. before Paxar Americas filed the Ohio DJ Action, <u>the first-to-file rule does not apply where the first forum (i.e., Massachusetts) is inconvenient</u>. Specifically, "if the convenience factors under Section 1404(a)…weigh in favor of the second-filed action, the courts may disregard the first-filed rule." 17 Wm. J. Moore, Moore's Federal Practice 3d, § 111.13[1][o], at 111-99 (3rd ed. 1999) (hereinafter, "Moore's"). "Weighing the balance of conveniences in the context of a first-filed rule analysis requires consideration of <u>the same factors</u> that apply to the decision of whether transfer is appropriate under 28 U.S.C. § 1404(a)." *Invivo,* 119 F.Supp.2d at 440. Indeed, this Court has found that courts should consider whether "a balancing of conveniences that may favor the second forum". *Dupont Pharms. Co. v. Sonus Pharms., Inc.,* 122 F.Supp.2d 230, 231 (D. Mass. 2000). "Thus, <u>the first-filed doctrine does not supersede the inquiry into the balance of convenience required under § 1404</u>." *Invivo,* 119 F.Supp.2d at 440 (finding that the balance of conveniences favored transferring patent infringement action to where second-filed declaratory judgment action was pending) (emphasis added).

Because, for all the above-mentioned reasons, the Ohio forum is the most convenient forum, ZIH's first-to-file arguments are without merit. Transfer is appropriate in this case even absent the allegedly second-filed Ohio DJ action. *See, e.g., Lexington,* 1996 WL 463672, at * 1 (D. Mass. 1996) (transferring case where second-filed action was pending) ("[t]he first-filed preference, of course, is not to be given great weight"); *Wellons,* 749 F.Supp. at 337 (D. Mass. 1990) (same).

Moreover, "the courts generally give less weight to the first-filed rule when the competing actions were filed within a short time of each other." Moore's, at § 111.13[1][o], p. 111-100. Here, ZIH filed its Complaint against Paxar Corp. in the Massachusetts litigation on November 21, 2003, and Paxar Americas filed its Complaint against ZIH in the Ohio DJ Action on November 25, 2003.

In any event, even assuming *arguendo* that the Ohio court dismissed the Ohio DJ action, as discussed above, the pending Ohio Zebra/ZIH litigation (which was *truly* the first-filed case between these parties having been filed in April, 2003) still supports transfer to Ohio. *See* Moore's, *supra.*

### 6. The Interests of Justice and Trial Efficiency Favor Transfer to the Southern District of Ohio

Paxar Americas, the manufacturer of the accused product, has a regular and established place of business in Miamisburg, Ohio. Though Paxar Americas is not a party to this lawsuit, ZIH has stated that it seeks to enjoin the manufacture of the accused products in Ohio. (Ex. 5, at 4). Ohio, therefore, has a strong interest in adjudicating this dispute. Massachusetts' interests, in contrast, are minimal (if any). Additionally, because this case has not been on this Court's docket very long, nothing is wasted in transferring to the Southern District of Ohio. *See, e.g., Invivo,*

17

119 F.Supp.2d at 441.  Accordingly, the interests of justice and trial efficiency, based on a totality of the circumstances, clearly favor transfer to the Southern District of Ohio.

## CONCLUSION

For all the above-mentioned reasons, Paxar Corp. respectfully requests that this Court grant its Motion to Transfer and transfer this case to the Southern District of Ohio.

Date:  December 19, 2003

Respectfully submitted,
PAXAR CORPORATION
By its Attorneys,

/s/ Erik Paul Belt
Lee Carl Bromberg, BBO # 058480
Erik Paul Belt, BBO # 558620
Bromberg & Sunstein LLP
125 Summer Street
Boston, MA 02110
Tel: 617-443-9292
Fax: 617-443-0004
Email: ebelt@bromsun.com

Jean Dudek Kuelper, Esq.
Steven J. Hampton, Esq.
Sandra A. Frantzen, Esq.
McANDREWS, HELD & MALLOY LTD.
500 West Madison Street, Suite 3400
Chicago, IL  60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

02864/00501  286565.1